IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| Guadalupe Hernandez Gonzalez *et al.* | § | REMOVED FROM |
| | § | CAUSE NO. |
| *Plaintiffs,* | § | 327th JUDICIAL DISTRICT, EL |
| | § | PASO COUNTY |
| vs. | § | |
| | § | CIVIL ACTION NO. 3:22-CV-103 |
| Estate of Raul David Rosales Acosta | § | |
| | § | |
| *Defendant.* | § | |

## LEAR CORPORATION'S NOTICE OF REMOVAL

Lear Corporation ("Lear") files this Notice of Removal and hereby removes the civil action pending in the 327th Judicial District Court of El Paso County, Texas, styled *Gonzalez v. Estate of Raul Acosta v. Lear Corporation* (the "State Court Action") to the United States District Court for the Western District of Texas, El Paso Division, pursuant to 28 U.S.C. §§ 1332 and 1441. As grounds for this removal, Lear states as follows:

### I.      Summary of the Grounds for Removal

1.      This is a civil action over which this Court has original jurisdiction under 28 U.S.C. § 1332, and is one which may be removed to this Court pursuant to 28 U.S.C. § 1441(a)-(b) and 28 U.S.C. § 1446(c). Removal of the State Court Action to this Court is timely under the bad-faith exception in § 1446(c) and this Court possesses diversity jurisdiction over this action as there is complete diversity among all properly joined and/or aligned parties, and the amount in controversy exceeds $75,000, exclusive of interest and costs. Once this Court properly disregards the sham and improper claims, the remaining action fully satisfies the statutory requirements for removal.

**A.      In the State Court Action below, Plaintiffs and a single Defendant have colluded to avoid removal by filing a sham lawsuit to avoid federal jurisdiction.**

2.      In this action, Plaintiffs and Defendant Estate of Raul David Rosales Acosta (the "Acosta Estate" or "Defendant"), an alleged Texas resident, have colluded in bad faith to engage

in a sham lawsuit in a joint effort to defeat the real target Lear's ability to remove the case to federal court. Mr. Acosta and all but one of the Plaintiffs were employed by a Mexican affiliate of Lear and worked at its Rio Bravo facility in Juarez, Mexico (the other Plaintiff—Estate of Lorenzo Aguirre Vazquez—worked at the Monarca plant in Juarez). Both Plaintiffs and Mr. Acosta allegedly contracted Covid-19 in the early days of the pandemic and suffered injuries and/or died in between or around April and May 2020. Plaintiffs and the Acosta Estate blame Lear for their injuries. In April 2020, the attorney who later started to represent the Acosta Estate held a virtual press conference in Mexico in which he alleged that Lear and other companies did not take the necessary steps to protect its employees, claimed his law firm represented at least 50 deceased employees and their families, and stated he would sue the maquiladoras in the United States. However, despite their having identical claims against Lear, and the soon-to-be Acosta Estate's attorney's promise to sue maquiladoras like Lear, neither the Plaintiffs nor the Estate filed a lawsuit against Lear. Instead, as detailed below, Plaintiffs filed a sham lawsuit against the Acosta Estate, which then waited over a year before introducing a claim against Lear, in what is nothing more than a flagrant manipulation of the removal rules in a transparent attempt to avoid federal jurisdiction.

3.     On July 10, 2020, Plaintiffs brought suit for alleged injuries, which they claim resulted from contracting Covid-19 while working for a Lear affiliate. Although Plaintiffs and the Acosta Estate are in the same position with respect to Lear (employees who claim to have contracted Covid-19 in that capacity), and Plaintiffs' pleading clearly implicates Lear (including alleging Mr. Acosta took direction from Lear and that Lear failed to close its Mexico facilities even though it closed its U.S. facilities), Plaintiffs chose to assert claims solely against the Acosta Estate — despite surely knowing they could never collect anywhere near the $25 million they seek

in damages from a former salaried Quality Supervisor. Plaintiffs then let their claims against the Acosta Estate sit idle for over a year. When after fourteen months of inactivity the state court on October 18, 2021 issued a Notice of Intent to Dismiss for Want of Prosecution, the Acosta Estate did not contest Plaintiffs' motion to retain the case. (Notice of Intent to Dismiss [**Ex. A-7**].)

4.      Even more inexplicably, Defendant did not take advantage of a new Texas statute that may have barred the Plaintiffs' lawsuit. As conceded in Plaintiff's Verified Motion to Retain, on June 14, 2021, the new statute "significantly chang[ed] the basis for establishing liability for a Covid-19 exposure case." (Verified Motion to Retain at ⁋ 3 [A-12].) Among other things, a new statute required Plaintiffs to file a threshold expert report, designed to weed out frivolous lawsuits, "no later than the 120th day after the date a defendant files an answer." Tex. Civ Prac. & Rem. Code § 148.003(b). But the Plaintiffs failed to meet this statutory deadline. And yet, even though the time for filing such expert report had passed, the Acosta Estate failed to take the obvious step of seeking summary dismissal on this ground.[1] Instead, on November 15, 2021, after the 120 day deadline for filing the expert report had expired, Plaintiffs and the Acosta Estate jointly submitted an agreed motion to extend the expert-report requirements. No truly adverse parties would agree to let a case sit for a year and jointly agree to delay the required expert report instead of the defendant pursuing an expedited dismissal of the lawsuit. The pleadings also exemplify the nature of the sham suit between Plaintiffs and the Acosta Estate as the Acosta Estate alone seeks twenty times the amount of damages against Lear as the nearly 40 Plaintiffs seek from the Acosta Estate. These facts show the intention of both parties and their counsel to "manufacture" a sham lawsuit that targeted Lear but was designed solely to rob Lear of the right to remove.

---

[1] In this case, the 120 days began to run on the date the statute was enacted, i.e., June 14, 2021. That period expired on October 12, 2021.

**B.      The "Defendant" is represented by counsel who sought plaintiffs to sue Lear at the time of the incident.**

5.      As noted above, the Acosta Estate is represented by a well-known plaintiff's attorney who held press conferences with major media outlets in Mexico in March and April 2020 and publicly announced that his firm represented "more than fifty families whose loved ones died after contracting Covid-19 at a factory just across the border in Mexico." In other words, as of April 2020, the Acosta Estate's counsel advertised that he represented numerous workers who worked for a Lear affiliate. All that was left was to concoct a scheme to file a lawsuit in the United States that could avoid federal jurisdiction.

6.      The suit between Plaintiffs and the Acosta Estate is a sham brought in bad faith for the purpose of denying Lear its removal rights.  In determining the propriety of removal, this Court should disregard that sham claim.  What remains is the claim between one claimant, the Acosta Estate, and one defendant, Lear.  That remaining claim is between diverse parties in which there is no local forum defendant, and therefore it is removable under Rule 1441.  The Court may then consider whether to dismiss the plaintiffs (because they assert no non-sham claim), or sever the Plaintiffs vs. Acosta Estate claim and remand that to the state court, or perhaps let the Plaintiffs remain in the case and file additional claims they believe to be viable against the other parties. Alternatively, the Court may realign the parties so that the Acosta Estate is a plaintiff and Lear is the only defendant before determining its jurisdiction. In any event, diversity jurisdiction exists in this Court and this removal is timely.

## II.     Pleadings, Process, and Orders: A Sequence of Lengthy Events to Avoid Removal

7.     On July 10, 2020, Plaintiffs[2] filed the State Court Action against the Acosta Estate in the 327th Judicial District of El Paso, Texas, Cause No. 2020-DCV-2208. True and correct copies of the docket, the Original Petition, and all filings in the State Court Action are attached hereto as **Exhibits A and A-1 through A-19**.

8.     On October 18, 2021, the 327th Judicial District issued a Notice of Intent to Dismiss for Want of Prosecution. Plaintiffs moved to retain the case on November 15, 2021, and the Order Setting Jury Trial was issued on December 7, 2021. (Notice of Intent to Dismiss [**Ex. A-7**].)

9.     On February 1, 2022, the Acosta Estate filed a Third-Party Petition against Defendant Lear in the 327th Judicial District of El Paso, Texas, Cause No. 2020-DCV-2208, bringing claims of indemnity, negligence/gross negligence, respondeat superior, and wrongful death. (Defendant's Original Third-Party Petition, [**A-16**].)

10.     Lear has not appeared or answered in the State Court Action.

## III.     This Removal is Timely Because Plaintiffs and the Acosta Estate Have Colluded in Bad Faith to Prevent Lear's Removal

11.     Section 1446(b) requires that "the notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based … ." 28 U.S.C. § 1446(b). In addition, a case may not be removed "more than 1 year after

[2] Guadalupe Hernandez Gonzalez, Leonel Hernandez Arellano, Edgar Hernandez Arellano, Leslie Guadalupe Hernandez Arellano, Estate of Leonorilda Arellano Veloz, Mireya Martinez Jaramillo, Guillermina Jaramillo Guerrero, Estate of Julian Martinez Reyes, Isaias Castro Arano, Erika Jasmin Cervantes Romero, Estate of Tomas Cervantes Garcia, Angeles Mariali Cantera, Estate of Guillermo Chavez Cruz, Maria Navidad Samaniego Rosas, Juan Marcos Valero Samaniego, Bricia Areli Valero Samaniego, Estate of Oscar Valero Delgadillo, Said Alejandro Gutierrez Hernandez, Yolanda Navarro Leon, Herlinda Rocha Caro, Jocelyn Marison Rocha Gonzalez, Carlos Gabriela Rocha Gonzalez, Estate of Marysol Gonzalez Navarro, Maria Dolores Carrillo Rodriguez, Gloria Aracely Aguirre Carrillo, Mayra Fabiola Aguirre Carrillo, Estate of Lorenzo Aguirre Vazquez, Maria Tafoya Maquda, Estate of Rigoberto Tafoya Maqueda, Enadelia Landeros, Jazmin Barraza, Estate of Epitacio Barraza Olvera, Maria Cristina Ochoa Perez, Yuri Angelica Herrera Ochoa, Mia Herrera Ochoa, Estate of Florencio Herrera Tenchy, Daniel Ramirez Garcia, Rosa Isela Porras Martinez, Claudia Fabiola Chavez Renteria, Estate of Victor Alfonos Orozco (together, "Plaintiffs").

commencement of the action, unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action." 28 U.S.C. § 1446(c)(1). Lear has removed this case within 30 days of being served with a copy of the initial pleading. In addition, because Plaintiffs and the Acosta Estate have colluded in bad faith, including initiating the action with a sham lawsuit between Plaintiffs and the Acosta Estate with the purpose of preventing Lear from removing the case, removal is not barred by § 1446(c)(1)'s one-year limitation.

12.     Specifically, as reflected in the State Court Action's docket, Plaintiffs "only half-heartedly" pursued claims against a forum-state citizen and have kept the Acosta Estate in the case for one reason only—to prevent removal during § 1446(c)'s removal period. *See Hoyt v. Lane Constr. Corp.*, 927 F.3d 287, 291 (5th Cir. 2019); *Flores v. Intex Rec. Corp.*, No. 2:20-CV-73, 2020 U.S. Dist. LEXIS 205881, at *7-*8 (S.D. Tex. 2020) (noting that the plaintiffs' inaction against the non-diverse defendant "is highly suspicious and weighs in favor of a finding of bad faith"). For example, Plaintiffs failed to file the required statutory expert report to support their Covid-19-related claims within 120 days of their July 2020 lawsuit. Tex. Civ. Prac. & Rem. Code § 143.008(b) (requiring plaintiff to file an expert report within 120 days of defendant's answer "that provides a factual and scientific basis for the assertion that the defendant's failure to act caused the individual to contract a pandemic disease"). Instead, Plaintiffs colluded with the Acosta Estate to agree to extend the deadline for such expert report to June 2022. No reasonable defendant, especially a former employee's estate facing a claim for $25 million in damages, would have agreed to such an extension unless the lawsuit itself were a sham aimed at the soon-to-be-named real defendant, Lear.

13.     Plaintiffs' pleadings also exemplify their sham lawsuit against the Acosta Estate. For example, Plaintiffs do not allege Mr. Acosta owed any duty to Plaintiffs beyond the duty of

his employer. What's more, Plaintiff Estate of Lorenzo Aguirre Vazquez worked in a different plant and division than Mr. Acosta and thus would not have had any contact with him. As such, Plaintiffs do not possess any direct claims against the Acosta Estate. *See Allen v. Walmart Stores, LLC*, 907 F.3d 170, 182 (5th Cir. 2018) (citing *Leitch v. Hornsby*, 935 S.W.2d 114, 117 (Tex. 1996)). In addition, although the Plaintiffs' pleading asserts claims only against the Acosta Estate, the factual allegations included expressly implicate Lear. (**Ex. A-1** at pp.4-5.) Moreover, although Plaintiffs, a group of nearly 40 persons, seek $25 million from the Acosta Estate in damages resulting from the injuries and death of one or more persons, the Acosta Estate in turn seeks $500 million from Lear for damages arising from the death of Mr. Acosta and liability to Plaintiffs under the doctrine of respondeat superior. (Ex. **A-1** at 5; Ex. **A-16** at 5-6.) Together, these facts illustrate that Plaintiffs' sole purpose in naming the Acosta Estate as a defendant was to manipulate the removal rules and deprive Lear of its right to remove the case to federal court. *See Ralston v. Sherwin-Williams Co.*, No. 2:20-CV-64, 2020 U.S. Dist. LEXIS 99982, at *7 (S.D. Tex. 2020) (finding bad faith where "Plaintiffs engaged in manipulation of the removal rules").

14.     Because Plaintiffs and the Acosta Estate colluded together in bad faith to prevent Lear from removing this action, this removal is timely.

### IV.     Diversity of Citizenship Jurisdiction

15.     This Court has original subject matter jurisdiction over this lawsuit based upon diversity of citizenship as set forth below.

16.     By filing this Notice of Removal, Lear does not make a general appearance in this Court or the State Court and does not consent to the personal jurisdiction of this Court or the State Court. *See Ariz. v. Manypenny*, 451 U.S. 232, 242 n.17 (1981) (superseded by statute on other grounds) ("[I]f the state court lacks jurisdiction over the subject matter or the parties, the federal

court acquires none upon removal."); *Mandell v. Cent. Refrigerated Serv.*, No. EP-09-CV-260-DB, 2010 U.S. Dist. LEXIS 154527, at *5 (W.D. Tex. 2010) ("Removal, however, does not, in itself, constitute a waiver of any right to object to lack of personal jurisdiction ... ."). Lear reserves all rights to raise any and all available defenses in this Court or in the State Court in the event of a remand.

17.    This action is a civil action of which this Court has original jurisdiction under 28 U.S.C. § 1332, and is one which may be removed to this Court pursuant to the provisions of 28 U.S.C. § 1441(a)-(b) and 28 U.S.C. § 1446(c). There is complete diversity among all properly-joined and served parties, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

18.    Plaintiffs' Original Petition alleges Plaintiffs all worked in and/or resided in Mexico.

19.    Defendant and Third-Party Plaintiff Acosta Estate has Texas citizenship under 28 U.S.C § 1332(c)(2). Because the Acosta Estate was improperly joined, its consent to this removal was not obtained.

20.    Third-Party Defendant Lear is a Delaware corporation with its principal place of business in Michigan and is the true defendant in this action.

21.    The matter in controversy exceeds, exclusive of interest and costs, the sum or value of $75,000, giving rise to original federal court jurisdiction pursuant to 28 U.S.C. § 1332. Plaintiffs seek $25 million in damages from the Acosta Estate and the Acosta Estate seeks $500 million against Lear (including the $25 million claimed by the Plaintiffs). (**Exs. A-1** at 5 and **A-16** at 5-6.)

## V.    Disregarding the Sham Claim and/or Realignment of the Parties is Warranted For Purposes of Determining Jurisdiction

22.    This Court should disregard the sham claim between Plaintiffs and the Acosta Estate for purposes of determining removal jurisdiction.  What remains after disregarding the sham

claim is the claim filed by the Acosta Estate against Lear.  That claim runs between diverse parties and the defendant is not a citizen of the forum state, and therefore it is removable under Rule 1441. After jurisdiction is established, the Court may then consider whether to dismiss the plaintiffs (because they assert no non-sham claim), or sever the Plaintiffs vs. Acosta Estate claim and remand that by itself to the state court, or perhaps let the Plaintiffs remain in the case with an opportunity to file any non-sham claims they purport to have against the other parties. In the alternative, the Court may realign the parties as appropriate, such that the Plaintiffs and the Acosta Estate are both plaintiffs and Lear is the only defendant, before determining its removal jurisdiction.  Under any of these proper approaches under the circumstances of this case, this Court possesses jurisdiction upon removal.

23.    A civil action "may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b). However, "[i]f a party is improperly joined, a court may disregard the party's citizenship for purposes of determining subject matter jurisdiction." *Allen v. Walmart Stores, LLC*, 907 F.3d 170, 183 (5th Cir. 2018). Improper joinder must be demonstrated by either (1) "actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Id.*

24.    Similarly, "courts are not bound by the labels the parties give themselves in the pleadings ... [i]nstead, courts must look beyond the pleadings, and arrange the parties according to the sides in the dispute." *Ashford v. Aeroframe Servs, LLC*, 907 F.3d 385, 387 (5th Cir. 2018) (internal quotations omitted). "If the principal purpose of the suit produces an actual collision of interest, realignment is improper unless the claim is a 'sham.'" *Thompson v. GMC LLC*, No. 4:16-cv-0026-DMB-JMV, 2016 WL 7471328, at *10 (N.D. Miss. Dec. 28, 2016) (citing *Zurn Indus. v.*

*Acton Constr. Co.*, 847 F.2d 234, 236 (5th Cir. 1988)).

25.    Here, the claims filed in this action against the Acosta Estate are sham claims intended to manipulate the rules and avoid federal jurisdiction. As a preliminary matter, Plaintiffs are unable to establish a cause of action against the Acosta Estate. Under Texas law, "individual liability arises only when the officer or agent owes an independent duty of reasonable care to the injured party apart from the employer's duty." *Allen*, 907 F.3d at 182 (citing *Leitch v. Hornsby*, 935 S.W.2d 114, 117 (Tex. 1996)). The Plaintiffs' Original Petition seeks individual liability against the Acosta Estate but fails to allege that Mr. Acosta owed and subsequently breached any independent duty owed to Plaintiffs apart from his employer's duty. (*See* **Ex. A-1** at 1-2 (discussing Lear facilities in Mexico and stating "[Mr. Acosta] took direction from the Lear facility in El Paso, including the obligation to keep working at the plant in Juarez").)

26.    Moreover, Mr. Lorenzo Aguirre Vazquez did not work in the Rio Bravo plant with Mr. Acosta and the other Plaintiffs. Instead, he worked at the Monarca plant in Juarez. Unlike the Rio Bravo plant, which is part of the Trim Operations in the Seating Division, the Monarca plant is part of the E-Systems division. This further demonstrates the sham nature of this lawsuit, because Mr. Aguirre would have had no contact with Mr. Acosta and the claim in the lawsuit that his death "can be traced to Defendant Acosta" is false.

27.    In addition, Plaintiffs, all alleged employees of Lear, name and clearly implicate Lear in their pleading and have made no effort to pursue their claims against the Acosta Estate. (**Ex. A-1** at 3.) For example, Plaintiffs and the Acosta Estate colluded together to avoid early dismissal of the lawsuit due to Plaintiffs' failure to file the statutorily required expert report. Specifically, Plaintiffs and the Acosta Estate jointly agreed after the time for filing the expert report had passed to extend the expert-report deadline to June 2022. (**Ex. A-10**.) Similarly, because

nothing happened in the State Court Action after the Acosta Estate answered in August 2020, the state court issued a Notice of Intent to Dismiss for "want of prosecution" on October 18, 2021, forcing Plaintiffs to file a verified motion to retain the case. (**Ex. A-13**.) Moreover, the Acosta Estate is represented by a well-known plaintiff's attorney who held press conferences with major media outlets in Mexico in April 2020—i.e., prior to the Plaintiffs initiating their lawsuit—and publicly announced that his firm represented "more than fifty families whose loved ones died after contracting Covid-19 at a factory just across the border in Mexico." Further confirming that the initial suit between Plaintiffs and the Acosta Estate is sham is the fact that the Acosta Estate seeks twenty times the amount of damages as the nearly 40 Plaintiffs seek from the Acosta Estate.

28.     Because Plaintiffs' suit against the Acosta Estate is a sham brought for the sole purpose of preventing Lear's removal of the State Court Action, the Court may and should disregard the sham claim for purposes of determining removal jurisdiction; the remaining claim—between the Acosta Estate and Lear—fully satisfies the requirements of a removable action. *See, e.g.*, *Rojas v. Wells Fargo Bank, N.A.*, 571 F. App'x 274, 278 (5th Cir. 2014); *Thomas v. Barnett*, Civil Action No. 2:15-CV-2-KS-MTP, 2015 U.S. Dist. LEXIS 181554 at *11 (S.D. Miss. May 15, 2015). Alternatively, Plaintiffs and the Acosta Estate are aligned in that both parties seek redress for damages incurred from allegedly contracting the Covid-19 virus at the workplace. There is no collision of interests because Plaintiffs do not allege that Mr. Acosta owed any independent duty beyond the duty imposed on his employer and therefore fail to state a legally cognizable claim against the Acosta Estate. Accordingly, this Court may realign the parties to establish diversity jurisdiction over this case.  *E.g.*, *Doe v. Peoples*, 394 F. Supp. 3d 655, 659 (S.D. Miss. 2019).

29.     For the foregoing reasons, removal of the State Court Action is timely and this Court possesses original jurisdiction over the properly joined and aligned parties pursuant to 18 U.S.C.

§ 1332.[3]

Dated:  March 19, 2022

Respectfully submitted,

**BAKER & MCKENZIE, LLP** (*Counsel-in-Charge*)
700 Louisiana, Suite 3000
Houston, Texas 77002
(713) 427-5000 (Telephone)
(713) 427-5099 (Facsimile)


By:_____/s/_____C. Thomas Kruse_____
    **C. THOMAS KRUSE**
    tom.kruse@bakermckenzie.com
    State Bar No.  11742535
    **ALEXANDER BURCH**
    alexander.burch@bakermckenzie.com
    State Bar No.  24073975


**BLANCO ORDOÑEZ MATA & WECHSLER, P.C.**
5715 Cromo Dr.
El Paso, Texas 79912
(915) 845-5800 (Telephone)
(915) 845-5555 (Facsimile)


By: _____/s/_____Rene Ordoñez_____
    **RENE ORDOÑEZ**
    rordonez@bomwlaw.com
    State Bar No.  15300220
    **DANIEL ORDOÑEZ**
    dordonez@bomwlaw.com
    State Bar No.  24013271

Counsel for **LEAR CORPORATION**

---

[3] If the Court has any doubt about its jurisdiction over this case or if any party seeks a remand of this case, Lear requests an opportunity to engage in limited jurisdictional discovery.

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing document with the Clerk of the Court using the Court's electronic filing system, in accordance with the Federal Rules of Civil Procedure, on this the 19th day of March 2022:

**ANTHONY G. BUZBEE**
**CHRISTOPHER J. LEAVITT**
tbuzbee@txattorneys.com
The Buzbee Law Firm
JP Morgan Chase Tower
600 Travis, Suite 7300
Houston, Texas 77002
Telephone: (713) 223-5393
Facsimile: (713) 223-5909
Counsel for **ESTATE OF RAUL**
**DAVID ROSALES ACOSTA**

**JACOB M. MONTY**
jmonty@montyramirezlaw.com
**ERIN K. DELANO**
ekdelano@montyramirelaw.com
Monty & Ramirez, LLP
150 West Parker Road, 3rd Floor
Houston, Texas 77076
Telephone: (281) 493-5529
Facsimile: (281) 493-5983
Counsel for **GUADALUPE HERNANDEZ**
**GONZALEZ, et al.**

            /s/      Rene Ordoñez
**RENE ORDOÑEZ**

## INDEX OF STATE COURT ACTION FILINGS

| A | El Paso County Docket Report as of 03/15/2022 | |
|---|---|---|
| A-1 | Plaintiff's Original Petition | 07/10/2020 |
| A-2 | Civil Case Information Sheet | 07/10/2020 |
| A-3 | E-Filing Request for Issuance of Service | 07/10/2022 |
| A-4 | Personal Service of Citation Requested | 07/13/2020 |
| A-5 | Citation Issued to Estate of Raul David Rosales Acosta | 07/15/2020 |
| A-6 | Defendant's Original Answer | 08/05/2020 |
| A-7 | Notice of Intent to Dismiss and Order Setting Hearing | 10/18/2021 |
| A-8 | Notice of Hearing for Dismissal for Want of Prosecution | 10/19/2021 |
| A-9 | Notice of Hearing for Dismissal for Want of Prosecution | 10/19/2021 |
| A-10 | Agreed Motion to Extend the Qualified Expert Report Deadline | 11/15/2021 |
| A-11 | Notice of Appearance | 11/15/2021 |
| A-12 | Plaintiffs' Motion to Retain | 11/15/2021 |
| A-13 | Plaintiffs' Verified Motion to Retain | 11/15/2021 |
| A-14 | Order Setting Trial and Scheduling Order | 12/07/2021 |
| A-15 | Order Granting Agreed Motion to Extend the Qualified Expert Report Deadline | 12/09/2021 |
| A-16 | Defendant's Original Third-Party Petition and Agreed Motion for Leave to Serve Non-Party Lear Corporation with Individual Claims | 02/01/2022 |
| A-17 | Civil Process Request | 02/01/2022 |
| A-18 | E-Filing Request for Issuance | 02/03/2022 |
| A-19 | Citation Issued to Lear Corporation | 02/14/2022 |